John D. Bennett, S.
In this accounting proceeding the estate is insolvent with assets approximating $10,000 (of which stock in the amount of $1,000 is of questionable value), and administration expenses and claims of over $60,000.
The decedent died on July 22, 1959, and by the terms of his will left his whole estate to his widow, the executrix herein. The main asset of the estate was a retail bakery business which he operated for many years as a sole proprietor with his wife acting as the chief sales clerk. Apparently the bakery shop enjoyed an excellent community reputation and it was a shock to the executrix to discover, following the decedent’s death, that an examination of the business records revealed the liabilities exceeded the assets by approximately $20,000.
The widow, as executrix, and who is also the sole beneficiary of the estate, containuod the business but the ratio of liabilities to assets gradually became worse. Efforts to sell the business were to no avail, and in May, 1961, the physical assets were sold at auction, netting $5,889,92,
*707 At the time of death the liabilities of the business included a claim of the United States for withholding, unemployment and social security taxes in the amount of $594, with interest to May 10,1961 included, plus interest after that date. The Industrial Commissioner, State of New York, claims $302.43 unemployment insurance taxes, plus interest prior to death. No claim is made for this before death period by the State Department of Taxation and Finance.
What other before death claims existed are not clear to the court, schedule d of the account lists some 43 claimants, in addition to the tax claims, and from the names of many of those listed, they are obviously firms supplying materials and services to the bakery trade. Many of these firms may have continued their supply accounts with the business after death and during the period of operation by the executrix. However, none of these claimants have appeared in this proceeding to distinguish their claims as being before death or during administration; nor have any of them, including the three taxing authorities, made objection that the executrix has continued the business beyond a reasonable period.
The court does not, therefore, have before it the problems of priority of claims before and after death, nor the restrictions on claimants who have sold goods to an executrix for the continuance of a business (Matter of Wolf, 87 N. Y. S. 2d 327).
During the continuance of the business by the executrix, Federal taxes (withholding, unemployment and social security) accrued in the claimed amount of $14,839.82 (less the' $594) plus some interest. Also during this period of administration, the Industrial Commissioner of the State of New York claims unemployment insurance taxes of $540.90, plus interest, and the New York State Tax Commission claims $673.19, plus interest, for withholding taxes.
The court agrees with the position taken by these three governmental agencies that the amounts due them for various taxes incurred during the continuance of the business by the executrix, were incurred during administration and are administration expenses entitled to preference over all claims based upon a debt of the deceased (Matter of McClatchey, 170 Misc. 696; Matter of Phillips, 169 Misc. 86, 87, 88).
The widow claims a setoff of $1,000 under section 200 of the Surrogate’s Court Act, to which the United States objects claiming that she received in excess of this sum in weekly payments of $50 to $60 she made to herself in the nature of salary while operating the business approximately 22 months. It appears the widow managed the business, working 6 to 7 days a week *708 and up to 12 hours per day. There is no rule which says that an executrix, who is an employee in decedent’s business rendering nonexecutorial services, may not be paid a salary for so working in the business (Matter of Ridosh, 7 A D 2d 534). The objection does not question the value of her services but states that in effect payment to the widow of her widow’s exemption has already been made. The court must consider this in conjunction with the objection of the Industrial Commissioner to the payment of the funeral bill amounting to $1,613.70, and which the executrix paid out of assets of the business (not debiting or crediting herself therewith on her accounting).
The court agrees that this funeral bill was improperly paid from the business funds. Subsection 4 of section 200 of the Surrogate’s Court Act reads that where there are insufficient assets to pay the funeral expenses, the estate representative must first apply any moneys or other personal property to the payment thereof before payment of the widow’s $1,000 exemption. The court accordingly denies the widow’s setoff, as these funds are first subject to payment of the funeral bill, and surcharges her for the balance of the funeral bill. The allowable commissions will be applied in reduction of this surcharge.
The attorney requests an allowance of $3,000 for services rendered and to be rendered herein, to which the United States and the State Tax Commissioner object as being excessive, not as to services rendered but in comparison with the total assets of the estate. The court in making this allowance is aware of the legal difficulties involved in an insolvent estate of this nature and fixes the fee of the attorney in the amount of $3,000 for all services rendered, including the completion of this proceeding. Insolvent estates require adequate legal services.
We come to the problem of the payment of the administration expenses and the preferences, if any, to be accorded this class of claimants. These administration expenses, with the various taxes included in this classification, exceed the funds available. The Industrial Commissioner asserts the proposition that all administration expenses must be treated in pari passu, even to the extent that court filing fees should be prorated equally with his claim. With this construction, the court cannot agree. In Matter of Rothstein (151 Misc. 466, 468), it was rightly said that administration expenses are necessarily a first charge upon assets of a deceased, and unless these expenses are provided for there can be no assurance that estates can be administered at all, pointing out that even funeral expenses are subordinate thereto.
*709 Statutory filing fees must be paid in full in accordance with applicable law, and to prorate them would mean a personal charge upon the fiduciary for which there is no authority. Other necessary out-of-pocket expenses and fiduciary bond premiums would of necessity similarly be a first and necessary charge. The services of the attorney must, again of necessity, be provided for since the law does not require the attorney to gamble on what percentage of his rightful fee may be ultimately coming to him upon the conclusion of the estate. Payment of statutory commissions of the fiduciary is in this class of administration expenses.
The court in deciding a similar problem in Matter of Lieberman (137 N. Y. S. 2d 81), allowed the attorneys’ fee and their disbursements, administrator’s commissions and the special guardian’s fee as priority.
The order of priority set forth in Matter of Cornez (27 Misc 2d 671), in an insolvent estate, after allowing widow’s setoff, was-the attorney’s fee, the commissions and other administration expenses. Accordingly, the contention of the Industrial Commissioner is overruled.
The United States claims a trust arose for withholding taxes and which trust is entitled to priority over all administration expenses. There has been no showing that a separate fund was maintained nor that any funds have been traced which may have been converted (Matter of Axelrad, 24 Misc 2d 1).
The United States claims priority over the Department of Taxation and Finance and the Industrial Commissioner, and that its preference under section 191 of title 31 of the United States Code is not diminished because the claims are administration expenses. It bases this proposition upon the interpretation of the word “ person ” in the first sentence of that section which reads: 1‘ Whenever any person indebted to the United States is insolvent * * * the debts due to the United States shall be first satisfied ’ ’. The United States claims not as a creditor of the deceased but against a debtor who is insolvent, the executrix, during the continuance of the business, and that the executrix was a “person” within the meaning of that statute. The court notes that the Certificate of Assessments and Payments filed with the court by the United States shows the name of the taxpayer as “ Est. of Arthur B. Ilenke D/B/A Henkes Cake Shop ’•’. The court cannot agree that an executor of an estate is such a “person” as the statute contemplates. We cannot conclude that the executrix was insolvent. The insolvency here was the estate which the person of the executrix *710 represented. Nor can the court construe the word “ debts ” in that statute to mean other than indebtedness owed by the decedent at the time of his death.
The United States argues that its claim for taxes during the period the business was continued after death are administration expenses, with which proposition the court has agreed. Having taken this position, the United States must abide by the consequences of its stand. The court finds no authority to give preference to any of the three taxing authorities claiming as administration expenses and finds that they share pro rata in the funds available, after payment of filing fees and necessary out-of-pocket disbursements, the attorney’s fee, and payment of the executrix’ commissions.
The court at this time will make no determination of priority as to debts of the decedent. Since the record shows there are insufficient assets to pay administration expenses in full, the question is academic.
The administration expenses may be paid from the available assets, but no final decree discharging the executrix will be entered until the estate tax proceeding is completed.